IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| WASHINGTON MUTUAL, INC., et al., ) | Bankruptcy Case No. 08-12229-MFW |
| ) | |
| Debtors. ) | Adv. Pro. No. 10-50911-MFW |
| ) | |
| BENJAMIN BUSH, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | C.A. No. 12-272 (GMS) |
| ) | |
| WASHINGTON MUTUAL, INC., et al., ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM

### I. INTRODUCTION

Appellant Benjamin Bush appeals from a January 3, 2012, Order and Opinion (D.I. 1-2, 1-3) of the United States Bankruptcy Court for the District of Delaware. Presently before the court is WMI Liquidating Trust's[1] Motion to Dismiss that appeal (the "Motion") (D.I. 10). For the reasons that follow, the court will grant Debtors' Motion and dismiss this case.

### II. BACKGROUND

Prior to September 25, 2008, Washington Mutual, Inc. was a savings and loan holding company that owned Washington Mutual Bank. (D.I. 10, at 5). On September 25, 2008, the Office of Thrift Supervision closed Washington Mutual Bank and appointed the FDIC as receiver. The FDIC took immediate control of the bank, and that same day, executed an agreement to sell

---

[1] WMI Liquidating Trust is the successor in interest to Debtors Washington Mutual, Inc. and WMI Investment Corp. They will collectively be referred to as "Debtors."

1

substantially all of the bank's assets to JPMorgan Chase Bank. On September 26, 2008, Debtors filed for chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware. (Bankr. Case No. 08-12229-MFW, D.I. 1). On February 23, 2012, the Bankruptcy Court entered an order confirming Debtors' Seventh Amended Joint Plan. (*Id.*, D.I. 9759).

This appeal stems from a lawsuit filed by Anchor Savings Bank in 1995 against the United States in the U.S. Court of Federal Claims (the "Anchor Litigation"). *See Anchor Sav. Bank, FSB v. United States*, 81 Fed. Cl. 1 (2008), *aff'd in part, remanded in part*, 597 F.3d 1356 (Fed. Cir. 2010). This cause of action then transferred to Dime Bancorp, another savings and loan holding company, through a merger of the two banks. In December 2000, Dime Bancorp issued Litigation Tracking Warrants (the "Dime Warrants") to each shareholder of Dime Bancorp. These publicly traded Dime Warrants entitled the holders (the "LTW Holders") to an amount of Dime Bancorp common stock worth 85% of any proceeds Dime Bancorp recovered from the Anchor Litigation. In 2002, Washington Mutual, Inc. acquired Dime Bancorp. Washington Mutual continued to prosecute the Anchor Litigation and agreed to honor the Dime Warrants with its own stock.

On April 12, 2012, certain institutional LTW Holders (the "Lead Plaintiffs") commenced an adversary proceeding against Debtors seeking declaratory judgment that the Dime Warrants represented a debt, and thus a claim to assets of the Debtors' bankruptcy estate, rather than an equity interest. (Bankr. Adv. No. 10-50911, D.I. 1). On September 6, 2011, the Bankruptcy Court entered an order that certified all LTW Holders as a class under Fed. R. Civ. P. 23 and appointed class counsel. (*Id.*, D.I. 275, Ex. 1, at 2). After a trial, on January 3, 2012, the Bankruptcy Court entered an Opinion (the "Dime Warrants Opinion") and Order (the "January 3 Order") granting judgment in favor of Debtors, determining that the Dime Warrants represented an equity interest. (D.I. 1-3, at 23).

Appellant purports to hold 1.5 million Dime Warrants. On January 26, 2012, Appellant filed a notice of appeal from the January 3 Order, which he later amended on March 3, 2012. (D.I. 1). Because the Dime Warrants Opinion did not resolve all outstanding questions surrounding the Dime Warrants issue, the Lead Plaintiffs and Debtors proposed a stipulated settlement agreement that sought to finalize the treatment of the Dime Warrants (the "LTW Settlement"). Appellant filed several objections to the proposed class-wide LTW Settlement. On February 13, 2012, the Bankruptcy Court overruled Appellant's and other individuals' objections and entered an order (the "LTW Settlement Order") approving the LTW Settlement. (Bankr. Adv. No. 10-50911, D.I. 344). Appellant did not appeal from the LTW Settlement Order. On November 16, 2012, Appellee filed the present Motion to Dismiss. (D.I. 10).

### III. LEGAL STANDARD

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1). When reviewing a case on appeal, the court reviews the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof. *In re United Healthcare Systems, Inc.*, 396 F.3d 247, 249 (3d Cir. 2005).

### IV. DISCUSSION[2]

Appellant raises three issues on appeal: (I) whether the Bankruptcy Court erred by entering judgment in favor of Appellee in the Dime Warrants Opinion; (II) whether the Bankruptcy Court erred by overruling his objections to the LTW Settlement Agreement; and (III) whether the Bankruptcy Court erred by overruling his objection that class counsel had a disabling conflict of interest. (D.I. 4, at 2). Appellee's Motion to Dismiss argues that Appellant's appeal from the

---

[2] Pursuant to Fed. R. Bankr. P. 8019(b), the court finds that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

3

Dime Warrants Opinion is moot because it was superseded by the LTW Settlement Agreement, or alternatively, is equitably moot because the Debtors' confirmed plan has been substantially consummated. (D.I. 10, at 4). Appellee also maintains that issues II and III on appeal are not properly before this court because they were not decided in the January 3 Order. (*Id.*). In response, Appellant asserts that the Bankruptcy Court lacked subject matter jurisdiction over the LTW Claims dispute. (D.I. 11, at 14).

1. **Lack of Subject Matter Jurisdiction**

Appellant contends that the right to recover the proceeds of the Anchor Litigation was transferred from the FDIC to JPMorgan prior to Debtors' bankruptcy filing. (D.I. 11, at 6). He argues that this asset never became property of the Debtors' estate, and therefore, the Dime Warrants issue was not subject to the Bankruptcy Court's jurisdiction. (*Id.*). The court must reject this argument. As an initial matter, the fact that Debtors claimed an interest in the Anchor Litigation was sufficient to confer jurisdiction in the Bankruptcy Court. *See* 11 U.S.C. § 157(b)(2)(O); *In re Cont'l Airlines*, 138 B.R. 442, 445 (D. Del. 1992) ("The determination of the property of the estate is one of the core proceedings arising under title 11."). Furthermore, this argument ignores the Bankruptcy Court's conclusion that the Dime Warrants did not provide the LTW holders with any interest in the Anchor Litigation itself, but rather an interest in Debtors' common stock that merely tracked the value of the Anchor Litigation proceeds. (D.I. 1-3, at 31). Regardless of which entity held the rights to the proceeds of the Anchor Litigation, the Dime Warrants were independent claims against the Debtors' property, and thus squarely within the jurisdiction of the Bankruptcy Court. *See* 11 U.S.C. § 157(b)(2)(B).

2. **Appellant's Issues II and III**

The court agrees with Appellee that Appellant's second and third issues on appeal are not properly before this court. The Bankruptcy Court disposed of Appellant's objections to the

4

proposed LTW settlement and the alleged class counsel conflict in its LTW Settlement Order, not in its January 3 Order. (*See* Bankr. Adv. No. 10-50911, D.I. 344, at 3). The record indicates that Appellant neither appealed from the LTW Settlement Order nor sought a stay of that Order pending appeal. Appellant argues that because Appellee had constructive or actual notice that he would raise these issues on appeal, the court should consider these arguments based on a theory of excusable neglect. (D.I. 11, at 9–11). Excusable neglect, however, only allows a court to extend the appellate filing deadline an additional 21 days; it is not a basis for implying jurisdiction when the appropriate appeal was never filed. *See* Fed. R. Bankr. P. 8002(d)(1)(B). "Failure to file a timely notice of appeal thus deprives the district court of jurisdiction to review the bankruptcy court's order or judgment." *In re Universal Minerals, Inc.*, 755 F.2d 309, 312 (3d Cir. 1985). Since Appellant did not file a timely appeal from the LTW Settlement Order, the court does not have jurisdiction to review Appellant's second and third issues.

3.   **Review of the Bankruptcy Court's January 3 Order**

Appellee finally argues that appellate review of the Dime Warrants Opinion is moot for two reasons: (1) the Bankruptcy Court's approval of the LTW Settlement supersedes that opinion, and (2) the Debtors' confirmed plan is substantially consummated, which renders the appeal equitably moot. (D.I. 10, at 11–12). The court agrees that because Appellant is bound by the LTW Settlement, the court cannot provide meaningful relief on this issue and it is therefore moot.

Constitutional mootness is a threshold question for determining whether this court has proper appellate jurisdiction. *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007). This jurisdictional prerequisite arises from the "case or controversy" requirement of Article III of the United States Constitution. *Id.*; *see* U.S. Const. art. III, § 2, cl. 1. If there is no live case or controversy, then the court lacks jurisdiction and must dismiss the appeal as moot. *See Sec. & Exch. Comm'n v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972). Mootness can arise

5

at any stage of judicial review. *Id.* "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* (quoting *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003)). "[A]n appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it 'impossible for the court to grant any effectual relief whatever.'" *In re Cont'l Airlines*, 91 F.3d 553, 558 (3d Cir. 1996) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

Appellant was a member of the certified class of LTW Holders. (Bankr. Adv. No. 10-50911, D.I. 275, Ex. 1, at 2) ("A Class consisting of all holders of Litigation Tracking Warrants issued by Dime Bancorp., Inc. (the "Class") shall be certified for the purposes of this Adversary Proceeding, pursuant to Federal Rule of Civil Procedure 23"). Since the LTW Holders sought declaratory relief respecting the class as a whole, Fed. R. Civ. P. 23(b)(2) did not require all class members to receive notice or the right to opt-out. (Bankr. Adv. No. 10-50911, D.I. 275, Ex. 1, at 2); *see Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 393 (3d Cir. 1981) ("if the case falls within Rule 23(b)(2), class members are not entitled to notice of the pendency of the action and may not opt out"). The subsequent class-wide LTW Settlement Order bound the entire class of LTW Holders:

> This Stipulation shall be binding upon the and inure to the benefit of the Debtors, their chapter 11 estates, the LTW Holders, and their respective successors and assigns, including, without limitation, any liquidating trustee, or any other successor in interest to the Debtors or their chapter 11 estates.

(Bankr. Adv. No. 10-50911, D.I. 344, Ex. 1, at 14). Further, this Order completely disposed of all claims raised against Debtors relating to the Dime Warrants:

> Upon the Effective Date, on account of the claims and causes of actions asserted by (a) the Named Plaintiffs in the Dime Warrants Action, on behalf of themselves and *all LTW Holders*, and (b) the LTW Holders in the LTW Proofs of Claim, the LTW Holders shall receive in the aggregate, the following:

6

> i. An Allowed General Unsecured Claim . . . .
> ii. Subject to the provisions of decretal paragraph 3(iii) hereof, an Allowed Subordinated Claim . . . .
> iii. 8.77% of the Reorganized Common Stock . . . .
>
> \* \* \*
>
> Upon the Effective Date, (i) pursuant to Rule 7041 of the Federal Rules of Bankruptcy Procedure and Rule 41(a) of the Federal Rules of Civil Procedure, *any and all claims and causes of action asserted by the LTW Holders in the Dime Warrants Action shall be deemed dismissed*, with prejudice . . . .

(*Id.*, D.I. 344, Ex. 1, at 9–11) (emphasis added).

Appellant did not appeal from that Order. His rights regarding the Dime Warrants are now defined and controlled by the LTW Settlement. Consequently, this appeal lacks any justiciable controversy. *See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994) (recognizing mootness by reason of settlement); *see also Carlough v. Amchem Products, Inc.*, 834 F. Supp. 1437, 1466 (E.D. Pa. 1993) ("Generally, if the parties reach a settlement, the case is no longer justiciable as an Article III controversy."). Regardless of whether this court reverses the Bankruptcy Court's declarative judgment in the Dime Warrants Opinion, the treatment of the Dime Warrants in Debtors' confirmed plan will remain independently governed by the LTW Settlement. Issuing an opinion on this point would be merely advisory. The court finds that this appeal is constitutionally moot. The court need not address the equitable mootness argument.

## V. CONCLUSION

For the foregoing reasons, the court will grant Appellee's Motion (D.I. 10) and DISMISS the appeal from the Bankruptcy Court's January 3 Order.

Dated: February 2, 2015

UNITED STATES DISTRICT JUDGE